**STATE of Missouri, Appellant,**

v.

**Kent Lee HANNERS, Respondent.**

No. 55967.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 8, 1989.

Ian D.W. Sutherland, Pros. Atty., Cape Girardeau, for appellant.

Albert C. Lowes, Cape Girardeau, for respondent.

DOWD, Presiding Judge.

The state appeals from an order suppressing the use at trial of the results of a blood alcohol test performed upon respondent. We affirm.

The facts were developed at the hearing held to consider the motion to suppress. On May 30, 1988, respondent's car ran off the road into a ditch. He suffered injuries from the accident including a broken nose and a moderate concussion. A nearby farmer witnessed the accident and called for medical assistance. Shortly after the ambulance arrived, State Trooper Anderson appeared at the scene to begin his investigation. He allegedly smelled alcohol on respondent's breath and placed him under arrest for operating a motor vehicle while intoxicated and with operating a motor vehicle in a careless and imprudent manner. Since respondent was to be transported to Southeast Missouri Hospital, Trooper Anderson called to arrange for Trooper Horn to meet the ambulance at the hospital and obtain a blood sample for a blood alcohol test.

Trooper Horn arrived after respondent had been removed to the emergency room. She notified hospital personnel of her presence and provided a vial for the sample. She also spoke with respondent who gave his verbal consent to the test. The procedure was performed by Kent Enderle, R.N. who, because he had never done a "legal" blood test before, mistakenly began swabbing the arm with isopropyl alcohol. He was informed by another nurse that state procedures require a non-alcoholic antisep-

tic. Enderle then cleaned the area with betadine and/or sterile saline before drawing the blood. The system used is called "vacutainer" and is commonly used by hospitals for phlebotomy. The blood was then labeled by Trooper Horn who turned it over to Trooper Anderson who mailed it to the Criminal Lab in Jefferson City. The alcohol content of respondent's blood was alleged to be .18% which is above the legal limit of .10%. § 577.030 RSMo 1986.

The respondent's motion to suppress, which was sustained by the trial court, alleged that the procedures followed during the withdrawal of blood failed to conform with the statutory requirements for blood alcohol tests. Specifically, section 577.029 RSMo 1986, requires that "a non-alcoholic antiseptic shall be used for cleansing the skin prior to venapuncture," and that "only a previously unused and sterile needle and sterile vessel shall be utilized." While respondent's list of errors included alleged violations of additional statutes and a constitutional claim as well, the lower court order sustained the motion to suppress because "the State of Missouri has failed to prove the statutory requirements of V.A.M.S. Section 577.029." We are limited in our review to a determination of whether the evidence was sufficient to sustain the trial court's finding on the requirements of section 577.029, RSMo 1986. *State v. Luleff*, 729 S.W.2d 530, 533 (Mo. App.1987).

Appellant's sole point on appeal is that the trial court erred in holding that the state had failed to prove certain elements required by section 577.029, RSMo 1986. We are thus required to consider the statutory construction used by the court below in its decision to sustain the motion to suppress. The court in *State v. Setter*, 763 S.W.2d 228, 230 (Mo.App.1988) in discussing section 577.029, pointed out that other jurisdictions with similar statutes have determined that absolute and literal compliance is necessary. *See* Annotation, Necessity and Sufficiency of Proof That Tests of Blood Alcohol Concentration Were Conducted in Conformance with Prescribed Methods, 96 A.L.R.3d 745, 788–790 (1980).

The requirements of the statute before us are unambiguous. The drawing of blood for this alcohol test must be done with a sterile needle. The blood must be placed in a sterile container and a non-alcoholic antiseptic must be used to clean the skin. These requirements are "clear and [are] not difficult to meet." *State v. Setter*, 763 S.W.2d 228, 231 (Mo.App.1988). In the instant case, as in *Setter*, the prosecutor had the burden of proving that the blood was drawn in accordance with the statutory requirements. Instead of offering affirmative proof, the prosecutor insists that courts should assume compliance. "Under the literal requirements of the statute, however, such assumptions may not be made." *Id.* at 230.

Review of the transcript of the hearing reveals that an alcoholic swab was used in the area from which blood was drawn. This action directly contravenes the letter of the statute. Second, while it is likely that the needle assembly used to draw the blood was sterile, this probability never ripened into fact because the medical personnel were never asked if the equipment used was sterile. Third, the container provided by Trooper Horn was also not proven to be sterile as required by the statute.

The language of section 577.029, RSMo 1986, mandates that all of its provisions be met. In the case at hand, three separate errors were made. These errors individually and cumulatively create the very problem the statute was designed to obviate. The accuracy of this blood test has been irrevocably compromised. Clearly the trial court's decision is buttressed by substantial evidence and is not error.

The order sustaining the motion to suppress is affirmed.

SIMON and HAMILTON, JJ., concur.